24-1128 Torrance Jackson v. Police Officer Anthony Fiorini. Thank you. And there's that black switch on the right-hand side that you can use to adjust the, there you go. Just get it so that we can see you and the microphones are pointing directly at you. I used to be taller, Your Honor. Those of us who are short appreciate that. Thank you, Your Honor. Okay, Mr. Lichtmacher? Certainly. Yeah, I understand you'd like to reserve three minutes for rebuttal? I do. So please proceed. Oh, I'm sorry. I'm sorry. I didn't mean to cut you off. I expect to be fairly brief. As you wish. There is a very simple and extremely important issue that we have to talk about today, whether or not this search should be legal. And it's justified by one sentence. Plaintiff's actions of lifting his body was consistent with individuals attempting to conceal illegal narcotics or other evidence within their rectum from officers. You're talking about in the cage now? I'm sorry. Which part of the episode are you talking about? I'm talking about the sigmoidoscopy. Oh, okay. You're talking about the sigmoidoscopy? Yeah. Okay. And can I just clarify, we're only talking about one defendant at this point, right, Officer Fiorini? Yeah. So link those two for me, will you? Sure. Fiorini goes to the judge, and Fiorini makes the argument that he needs to have a search warrant that is given that's fairly extensive, and I don't blame the judge for that. I think the information provided was off point, and it was that information that I was reading from. What was it that Fiorini said to the judge that was either false or misleading, and how was Fiorini involved in what happened at the sigmoidoscopy? He was outside. He heard some noises inside, but he wasn't himself involved. So how was he involved in that particular issue, if that's the issue? Certainly. By making the statement about plaintiff's actions indicating that he was probably concealing drugs in his rectum, getting that to the judge, you know, this caused the whole chain of events that led to this horrible procedure. Okay. He said to the judge that he thought that the guy was doing something of that sort. Was that a lie? I believe so. I believe it's a gross— You mean he didn't believe it? I don't think— Or wasn't it—I'm confused. Sure. Are you saying that what he saw was not enough so that he could say he believed that? Yes, and I think that if you're giving—this frightens me, this case, and I do a lot of these, but this one really scares me because if the standard that comes out from this case is that if an officer makes a statement such as he said, and please allow me, his action of lifting his body was consistent, et cetera, if that is allowed to go forward, then how many of these will happen? Well, then, you know, maybe the court was wrong in giving the warrant, in giving a search warrant, but you're not arguing with the court. You're arguing with Fiorina, and Fiorina said, I thought from what he did that there was hiding, and if Fiorina was honest about that, even if he was misguided, isn't that—isn't our test whether he spoke honestly? I mean, I hear your concern that the court probably should ask for more or might ask for more before giving a warrant, but how does that impinge on Fiorina? Fiorina, I don't mean to be redundant, he starts this whole thing in motion. You know, the plaintiff contests what happens on the scene. Okay, that's another issue. But, you know, at this point, Fiorina wants to justify, you know, what he's been doing. He goes and says, we've got to get more, we've got to be able to find this thing. He gives that to the judge, that information to the judge. But what evidence do you have that Fiorina was either lying or misleading as to what he thought? Wouldn't this be a question for a jury whether or not he was being honest? It wouldn't be because he could make up anything and bring it to the court. Well, you don't get to a jury with testimony by him saying this is what I thought and you just saying, no, I don't think he thought that. No. You need evidence that he didn't think that. Well, let's go to the end part. I realize that's not determinative, but there was nothing. Okay, it turned out there was nothing inside of him. So let's go to the end part, which is I thought it was the doctors who decided to do a sigmoidoscopy. I thought they got a warrant. There are any number of things they could have chosen to do. Fiorina didn't come in and tell them do a sigmoidoscopy. Well, you're laughing, and I guess are you laughing because he did tell them or you're saying that because he obtained a warrant that enabled the doctors to engage in a range of possible options, somehow he forced them or directed them that among the many options they had to do the sigmoidoscopy? I'm not sure why you're laughing. Yeah, I was agreeing with the way you put it was interesting. He goes to the hospital. We know that. He presents the warrant to the hospital. We know he speaks to a doctor when he goes to the hospital. It's an SA-8. The doctors don't remember specifically who they spoke to, what officer, which is understandable, particularly years after the fact. But that's your case because you would need to prove that Officer Fiorini caused this to happen. So if there's no evidence that he caused it to happen, that's not a good thing for you. That's a bad thing for your case, right? Well, I agree with you. Okay. I mean, I would love to be able to show that specifically, but in a way I have. He sets this whole thing in motion by this absurd statement about how he can determine that the guy secreted evidence. But the absurd statement you say, you must be saying that his statement that he believed is so absurd that that is evidence of its falsity in itself. And I must say I have more trouble with that, that an officer watching this might believe that, might be wrong, as he turned out to be, but that it is so absurd that I think he was intentionally misleading or lying is what I have trouble reading from these facts. And also, if I can add, not necessarily. The fact that they didn't find anything after all that time is really not determinative because had he inserted drugs into his system, they could have been absorbed into the system such that sigmoidoscopy would not have located them due to the passage of time. So I just also want to be really clear, right? The record does not establish in any way that he did not hide anything in his rectum. It's simply just, I don't know why you're smiling again. My understanding is that the record discloses I thought that the sigmoidoscopy did not locate any objects and given the passage of time, it was physiologically possible that it would have been absorbed into his bloodstream and I thought there were indications of drugs in his bloodstream. There's no doubt that he did drugs and I wasn't laughing at you. I thought there is evidence of this in his bloodstream. Yeah, there is. Okay. There is evidence. We're not arguing that and we didn't bring a false arrest claim, if you notice. There's no false arrest. There's no malicious prosecution here. I'm so unclear. What exactly are you claiming contending that Fiorina did that was illegal? I think he exaggerated. I think he may have explicitly lied. This is to get the warrant. You mean the warrant application? Yes. And, again, what you interpreted as laughing, you know, about him ordering a sigmoidoscopy, of course he didn't do that, but he inspired them. He what? He inspired them. He set the chain of events in motion that wound up in having this. The judicial officer issued the warrant, not Fiorina. Certainly, but it's based on Fiorina's statement to him and there's no evidence of anything else that would have caused this. You know, Fiorina goes there and then he shows up at the hospital with the statement. Were the people in the hospital entitled to or rely on the warrant? They are. In terms of that, I agree with you. I agree with the Court about that and it is problematic. But, you know, a jury should look at the statement that he gave to the judge to obtain this warrant. This is a highly, this Court has been very strong in the issue of anal cavity searches, even in the issue of anal cavity. Well, I understand the Fourth Amendment issues. You've reserved three minutes for rebuttal, so why don't we hear from counsels with the appellate. Why don't we hear from Attorney Smith and then, Mr. LaCroix, you have reserved three minutes if there's anything you feel the need to add afterwards. Thank you, Your Honor. You have to push really hard. Thank you, Judge. Good morning. May it please the Court. My name is Danielle Smith and I represent Officer Fiorini in this matter. Plaintiff has limited his argument, his oral argument, to the sigmoidoscopy, so that's what I will focus on in my response. I just want to clarify. First, the search warrant was not just based on Officer Fiorini's sworn statement. It was also based on the affidavit of Sheriff's Deputy Pufkey. He submitted an affidavit that also said that he observed the plaintiff trying to insert his hands into his rectum, despite being ordered not to do so. And that's what led to the incident at the shower. So that also supported Officer Fiorini's search warrant. Am I correct that I thought it was undisputed that it was the doctors, at least based on the record, the only evidence showed that it was the doctors or the medical professionals at the hospital who made the decision to implement the warrant by means of a sigmoidoscopy? That's absolutely correct, Your Honor. The search warrant specifically directed a search, but it allowed, and that is the word of the search warrant, it allows the doctors and medical staff to conduct that search in any manner they chose. And they chose to conduct the sigmoidoscopy based on their own medical expertise and discussions with their own legal counsel. Officer Fiorini did not in any way suggest that the sigmoidoscopy be conducted and certainly did not order that the sigmoidoscopy be conducted. If there's no other questions, I'd rest on my papers. And that's fine. Thank you very much. Thank you, Judge. Mr. Lichmacher, if there's anything that you heard from opposing counsel that you think merits rebuttal, you have three minutes to respond. I'd just like to cite what's in the warrant. The search warrant directed a search for Plaintiff's person. It allowed for medical staff, allowed for medical staff of St. Joseph's Hospital to utilize and any and all other medical procedures determined by said medical staff to be necessary and prudent. Fiorini's in the hospital. Fiorini brings this to the hospital. Fiorini causes this, and again, not to be redundant, I am very concerned that if the rule of this court comes out that an officer can make a statement like Fiorini made, that everybody can be subjected to a sigmoidoscopy in this limited situation, and this court has been very strict. I don't share your apprehension. I mean, I've been at this business for a number of years, and this is the first stigmoscopy case I've heard. I want it to be the last. That's what I'm arguing for, Your Honor. I don't think it should be allowed to be conducted based on a statement made by an officer, where a guy was basically pulling his pants up. Although I will also say that it's an incredibly common fact pattern that people who are drug dealers do hide drugs in their rectum. It's regrettably an incredibly common fact pattern. So if that's the sort of thing that we encounter regularly in the handful of cases that come to us, I can only imagine that that would reflect favorably upon the notion that the police officer would be able to testify from their experience and knowledge that it happens regularly, considering how often we have seen that. And it is recovered. So it's not something that is somehow facially implausible. It is something that happened, and it certainly was something that appeared to be plausible to the judge who signed the warrant, and that seems to be the most important fact here. Based on the statements that Fiorini gave him, and it's why I think that a jury should be able to hear. Counsel, would you be taking the same position had they actually found drugs? Had they found a drug, you said? Yeah. I might take the same position. That is, whether they found them or not would be irrelevant to your argument. It supports my argument a hair that they didn't. But, yes, I would still take the same position. This Court has spoken about privacy interests in this type of search, even in a much more limited search, in a visual cavity search. Watching the videos, we thought that the actions that your client took in the cage were consistent with someone reaching behind himself, trying to insert his hands into the pants in an effort that could be plausibly interpreted as inserting contraband into his rectum. That would obviously be part of the record that's before us, right? You wouldn't disagree that the videos are in the record, right? I don't disagree that the videos are in the record. I don't think there is a clear view. You would just take a different view as to how it should be interpreted. I don't think it's as clear as you think it is. Okay. Thank you very much. We have your argument, and we will take the case under advisement.